IN THE UNITED STATES DISTRCIT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
SOUTHERN DIVISION

RICKY ALLEN CARTER, AS NEXT
FRIEND OF BC, A MINOR                                        PLAINTIFF

VS.                                              CAUSE NO. _1:26cv89 TBM-BWR_

OCEAN SPRINGS SCHOOL DISTRICT;
JAMES HAWKINS; and
JOHN AND JANE DOES 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10         DEFENDANTS

COMPLAINT
(Jury Trial Requested)

Plaintiff, Ricky Allen Carter, as Next Friend of BC, a minor, through counsel, files this

Complaint for damages against the named Defendants, as follows:

**PARTIES**

1. Plaintiff, Ricky Allen Carter, the natural father and next friend of BC, and BC ("Plaintiff" or

"BC"), are resident citizens of Jackson County, Mississippi.

2. Defendant, Ocean Springs School District ("OSSD" or "the District"), is a public school

district organized under the laws of the State of Mississippi and is a political subdivision within the

State of Mississippi, with the ability to sue and be sued, and which at all material times employed

BC's teachers and their supervisors and administrators, and as yet unidentified John or Jane Does A,

B, or C. OSSD may be served with process by service upon its Superintendent, Michael Lindsey,

2300 Government Street, P.O. Box 7002, Ocean Springs, Mississippi 39564.

3. Defendant, James Hawkins ("Hawkins"), is sued individually and in his official capacity as a

former employee of Ocean Springs School District. At all material times, Hawkins was a teacher at

Ocean Springs High School employed by OSSD. Hawkins may be served with process at his home

address, 3325 Nottingham Rd., Ocean Springs, Mississippi 39564-4356, or wherever he may be

found, in accordance with law.

4. Plaintiff is ignorant of the true names and capacities of the Defendants sued as John and Jane Does 1-10, inclusive, and therefore sues these Defendants by such fictitious names and capacities. John and Jane Doe Defendants may include the OSHS Administrators and teachers who knew about Hawkins' grooming and sexual abuse / inappropriate sexual relationship with BC but did nothing to intervene or report same, and thereby facilitated said conduct, including but not limited to those Administrators and teachers named herein below. Plaintiff will amend this Complaint to allege their true names and capacities and liability, when ascertained. Plaintiff is informed and believes, and on that basis alleges, that each factitiously-named Defendant is responsible in some manner for the occurrences alleged, and that BC's injuries were proximately caused or contributed to by the conduct of each such Defendant. All allegations herein against "Defendants" and/or against OSSD are incorporated by reference against John and Jane Does 1-10.

## JURISDICTION AND VENUE

5. Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), which grant this Court original jurisdiction of any civil action to redress the deprivation, under color of State law, of rights secured by the Constitution and laws of the United States. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's pendent State law claims. This civil action asserts federal constitutional claims and State law claims.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

7. Plaintiff fulfilled all notice requirements pursuant to Miss. Code Ann. § 11-46-11 by sending a Notice of Claim to the Superintendent of OSSD and the School Board President. A copy of the Notice of Claim is attached as "Exhibit 1" and incorporated herein.

## FACTS

8. Whenever and wherever reference is made in this Complaint to any act by a Defendant and/or Defendants, such allegations and references shall also be deemed to mean the acts and

failures to act of each Defendant acting individually, jointly, and/or severally.

9. Prior to the specific events discussed herein involving BC, and given the nature of these incidents and OSSD's utter failure to intervene despite irrefutable evidence that its Administrators and teachers were aware of the sexual grooming and abuse of a student under their care, discovery in this case is likely to establish prior, similar instances wherein OSSD received direct notice through observations of its employees, and/or through complaints and/or reports by students and/or parents, about sexual misconduct, sexual harassment, teacher-student inappropriate relationships, and other actions that violate its policies and applicable law, but ignored those complaints in violation of its own policies and applicable law.

10. At the time of the events underlying these causes of action, BC was a student entrusted to the care of OSSD at Ocean Springs High School ("OSHS"), a school within OSSD.

11. BC was a junior at OSHS during the 2022-2023 school year and a senior during the 2023-2024 school year. At all material times, Defendant Hawkins was employed by OSSD as a teacher at OSHS, and John Does 1-10 include teachers and Administrators employed by OSSD who worked at OSHS.

12. During the fall semester of BC's junior year (2022-2023 school year), when BC was 16 years old, she was enrolled in Hawkins' Earth and Space Science class. Hawkins was aware that BC was in a vulnerable state due to a difficult and sometimes abusive home life.

13. The grooming began when BC suffered an emotional breakdown during the fall of 2022 and was found by Hawkins crying in the hallway outside his classroom. Hawkins positioned himself as BC's "comfort place" and "refuge", exploiting his knowledge of her family situation and fragile emotional state to isolate her and create a relationship of dependency.

14. The grooming quickly escalated to sexualized conduct. After BC began seeking counsel and comfort from Hawkins as her protector and safe place, Hawkins began making sexual comments

such as "you gotta stop looking at me like that, like you want me," and complimenting her body.

15. Hawkins extended his grooming and influence by communicating frequently with BC through social media and messaging platforms and apps. In an effort to conceal their communications from his wife, Hawkins created a Snapchat account under the fake name "Riley Reniford", and communicated with BC through private Instagram messages and stories.

16. Over time, Hawkins steered the relationship to progress to physical contact with the first kiss occurring unexpectedly (to BC) in OSHS's science lab. Hawkins progressed to touching and groping BC, which eventually led to mutual heavy petting and fondling on the premises of OSHS including in the science lab and in Hawkins' classroom.

17. Hawkins progressed to telling BC he loved her, that he was going to leave his wife, and that they would run away so they could be together. Hawkins furthered his grooming by buying BC gifts, including a necklace she wore every day.

18. Their social media communications soon progressed to the exchange of nude photographs, and eventually graphic sexual expression during live video calls.

19. In July 2023, during the summer between her junior and senior years, Hawkins had sexual intercourse with BC for the first time. Hawkins picked BC up from her job at McDonald's and took her to his home.

20. This began a pattern of regular sexual encounters that continued after school resumed for BC's senior year. Hawkins' and BC's sexual encounters occurred approximately once a week throughout the first semester of BC's senior year, at locations including Hawkins' home and in Hawkins' car in the parking lot for the Walmart automotive section.

21. Sometimes, Hawkins would have BC meet him in the parking lot to engage in heavy petting before school. On one such occasion, BC's car broke down and she was afraid she would not make it to school.

22. During the 2023-2024 school year, OSSD's complicity became undeniable. Despite not being enrolled in any of Hawkins' classes, BC spent a *minimum* of three hours each school day in Hawkins' classroom – usually sitting next to him at his desk, often with her legs or feet across his lap.

23. This conduct, which was within the course and scope of Hawkins' employment with OSSD, was made possible because multiple OSHS teachers knowingly and repeatedly permitted BC to leave their classes, many times only five or ten minutes into the start of their class, so she could go and spend intimate time with Hawkins. OSSD employed teachers at OSHS who knowingly, repeatedly allowed BC to miss their classes so she could go and spend time with Hawkins (including sitting with him and physically interacting with him while he was teaching his classes) include Nick Giorgio (BC's English teacher who allowed her to leave for nearly the entire class every day), Amanda Vaughn (BC's Geography teacher who permitted BC to leave her class daily), and Milla Ramel (BC's art teacher who also allowed BC to miss her class repeatedly).

24. On one occasion, when BC feared Hawkins had gotten her pregnant, BC went into Hawkins' class (or lab) to talk with him about that. Hawkins was not paying much attention to her, and BC got angry and put her hand down accidentally on a hot Bunsen burner, seriously burning her hand and causing the skin to bubble. She started screaming at him, and BC and Hawkins got into a heated argument / shouting match that progressed out into the hallway, which was occupied by OSSD teachers. An OSHS teacher approached them and exclaimed something like "what the heck is going on here?", then just walked away. Hawkins later messaged BC and apologized and talked about how he makes lots of mistakes, but that he was very sorry, and thereby smoothed things over.

25. Another teacher, Colonel Stephen Farragut (BC's ROTC teacher), initially allowed BC to leave his class early to spend time with Hawkins. Eventually, obviously aware of the inappropriate relationship he was facilitating, Colonel Farragut refused to let BC leave his class early, and admonished her that she went "to Hawkins' class too much." On information and belief, Colonel

Farragut is the individual who finally called BC's father (near the end of the first semester of BC's Senior Year) and (anonymously) told him that his daughter was sleeping with a teacher at OSHS.

26. BC's history teacher, Mr. Miles, forbade her from going to Hawkins' class at all.

27. Beyond the open facilitation by individual teachers, OSHS administrators and other staff employed by OSSD had actual knowledge of Hawkins' grossly inappropriate relationship with a minor student, and/or by the exercise of reasonable care should have known, but refused to take any reasonable action to intervene.

28. Hawkins boss, John Doe 1, had actual knowledge of the inappropriate relationship, but sought to protect Hawkins instead of the minor student under his care. Hawkins admitted to BC that his "boss" had warned him to "calm it down" with regard to his relationship and public interactions with BC because the OSHS administration was allegedly "investigating".

29. Teacher Christina Hallett witnessed an interaction between the two, after which she sent an email to Hawkins (which he showed to BC) wherein Hallet warned Hawkins to "watch out with that one because of the way she looks at you."

30. Upon information and belief, other administrators and teachers, including Assistant Principal LaMenda Hayes and/or Mallory Arriaga, spoke directly to Hawkins about his obvious sexualized relationship with BC.

31. On information and belief, in addition to what was plainly in front of everyone at OSHS's noses, many individuals reported and/or gave notice of the grossly inappropriate relationship between Hawkins and BC to OSHS administrators and teachers, including reports made to IEP teacher Ms. Glass. However, no reasonable efforts were made to intervene and/or protect this minor child in response thereto.

32. Multiple teachers and administrators at OSHS observed conduct constituting suspected child abuse but failed to report same as required by Mississippi's mandatory reporting laws, including

Miss. Code Ann. §§ 43-21-353 and 97-5-24. These failures also violated OSSD's Student Safety Policy (see Policy JGF: Student Safety, attached as "Exhibit 2") and constituted breaches of ministerial duties owed to BC by OSSD.

33. The brazenness of this *on-campus* relationship, conducted in plain sight of students, teachers, administrators, and staff, is further evidenced by the frequent physical and sexual contact that occurred at OSHS during BC's senior year. This included BC sitting with her legs across Hawkins' lap at his desk – including while Hawkins was teaching class, BC touching Hawkins through his clothing in a sexual manner, frequent kissing and heavy petting in the classroom and science lab, and Hawkins rubbing against her in the hallways.

34. The conduct also extended to school-sanctioned events, i.e., the two left a school football game to engage in heavy petting in a nearby parking lot.

35. This pervasive and open misconduct underscores the complete and reckless failure of OSSD and its employees to protect BC from a known predator operating within its walls.

36. In November 2023 BC's father received an anonymous phone call, believed to be from Colonel Farragut based on the voice BC's father heard on the other end of the line, stating that his daughter was "sleeping with a teacher." BC's father contacted her mother, and they went directly to the police, leading promptly to Hawkins' arrest.

37. Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681) prohibits sex discrimination and harassment in educational programs or activities receiving federal financial assistance. OSSD is subject to these laws and regulations. Federal law sets forth basic, mandatory requirements that OSSD was required to include in its policies and grievance procedures for Title IX sexual discrimination and harassment complaints. 34 CFR 106.45 mandated that OSSD's "grievance procedures for the prompt and equitable resolution of complaints of sex discrimination must be in writing and include provisions that incorporate the requirements of this section." 34 CFR

106.45(a)(1); see also 34 CFR 106.8(b)(2) (mandating that OSSD "must adopt, publish, and implement grievance procedures consistent with the requirements of 106.45, and if applicable 106.46, that provide for the prompt and equitable resolution of [Title IX] Complaints.")

38. After Ocean Springs Police involvement and Hawkins' arrest, OSSD failed to conduct a Title IX investigation, failed to provide supportive measures to BC, and failed to ensure she could continue her education safely. Although OSSD had a form for making a Title IX Complaint that was supposed to be provided to Complainants (See Policy GBR-E(2): Sexual Harassment Complaint Form attached as "Exhibit 3"), that form was never provided to BC or her parents. 34 CFR 106.44(f)(1)(ii) mandates that OSSD "require its Title IX Coordinator to… offer and coordinate supportive measures under paragraph (g) of this section, as appropriate, for the complainant."

39. In violation of Federal law and OSSD's Title IX policies and obligations, no information and/or reasonable supportive measures were offered and/or provided to BC. At no point did any representative of OSSD and/or OSHS reach out to BC or her family to apologize, offer counseling, or provide any form of support.

40. As a direct, proximate, and foreseeable result of Hawkins' emotional and sexual abuse, OSSD's complicity in actively facilitating the relationship and doing nothing to enforce its own policies and procedures or State law, and/or to provide a safe environment for its minor student, and the ensuing hostile school environment created by OSSD's pervasive failures, BC suffered severe and permanent harms and damages.

41. The ultimate intervention by the Ocean Springs Police Department, which **immediately** followed an OSSD teacher's *anonymous* call, plunged BC into a catastrophic crisis, causing her to suffer a severe mental breakdown, suicidal ideation, and an attempt to take her own life. VC fled home and was ultimately involuntarily committed to a psychiatric hospital ("Oceans") for one to two weeks, where she was physically restrained and bound to a gurney.

42. The emotional trauma has manifested as ongoing depression, paranoia, and difficulty maintaining relationships and employment. BC was ostracized by peers, harassed online with cruel memes and messages, and has been forced to carry the immense guilt and self-blame that was systematically ingrained in her through the grooming process and OSSD's utter failure to intervene in the face of known violations of its policies and procedures and applicable State and federal law.

43. BC was unable to return to the hostile and unsafe environment of OSHS. She was forced to withdraw from in-person learning and complete her senior year through online schooling. This deprived her of the quintessential senior year experience with her friends. BC was too embarrassed and traumatized to walk at her graduation ceremony.

44. At all material times, OSSD employees acted under color of state law and within the course and scope of their employment with OSSD. The persons involved in these events described herein, including Hawkins, the teachers and administrators who facilitated the relationship, and the administrators who were placed on notice and took no action, were in positions of trust, power, and authority over BC and participated in and/or allowed the sexual harassment and abuse of BC without adequate repercussions during the course and scope of their employment with OSSD. OSSD and its employees violated Mississippi Code sections regarding safe school environments, mandatory reporting of child abuse, the Educator Code of Ethics, Mississippi Department of Education regulations, Title IX regulations, and ministerial duties owed to students under their care and supervision.

45. OSSD engaged in wholesale violation of federal law regarding how to address complaints of sexual harassment under Title IX. OSSD failed to take any reasonable action to protect BC from sexual harassment, grooming, and statutory rape, nor to offer her reasonable accommodations and supportive measures when the abuse was discovered, demonstrating deliberate indifference for the rights and safety of BC and other minor students within their care.

46. Pursuant to its policies and applicable law, OSSD had a duty to train and supervise its principals, teachers, administrators, paraprofessionals, and other personnel, and ministerial duties to maintain a safe school environment and enact and implement anti-harassment policies, in order to ensure its employees were properly trained and equipped to oversee and promote the safety and well-being of students entrusted to their care and supervision; recognize and prevent sexual harassment, grooming, and inappropriate teacher-student relationships; recognize the effects of sexual abuse and provide appropriate care and responses to abused students; supervisors its teachers and administrators; supervise BC and other minor students; follow OSSD's policies and procedures related to sexual harassment, mandatory reporting, and the safety and supervision of students, including the content and operation OSSD's Staff/Student Non-fraternization Policy (see Policy GABB: Staff/Student Non-fraternization, attached as "Exhibit 4"), Sexual Harassment Policy (see Policy GBR: Sexual Harassment, attached as "Exhibit 5"), and Title IX Policy (see Policy JB: Student Complaints of Sexual Discrimination/Harassment – Title IX, attached as "Exhibit 6"); and report acts of sexual misconduct, suspected child abuse, and sexual involvement of an employee with a student to appropriate persons and authorities, including the victim's parents, administrators, and law enforcement, as required by Miss. Code Ann. §§ 43-21-353 and 97-5-24 and OSSD's Student Safety Policy and Sexual Harassment Policies. (Ex. 2, 4-6) OSSD failed to discharge each of these duties in direct violation of State law, applicable Department of Education and federal regulations, and its own policies and procedures.

47. The ongoing effects of the trauma ultimately led BC to drop out of college.

48. BC is seeking appropriate medical care and counseling, including treatment from counselors and staff at DaVine Counseling Center, LLC. The amount of future medical care, and prognosis for recovery, is unknown at this time.

49. BC's pre-existing vulnerabilities, stemming from a difficult home life, were not only known

to her abuser, Hawkins, but were actively exploited by him and exacerbated by the complete failure of the OSSD and its employees to protect her.

50. The injuries and damages to BC are severe, permanent, and were the direct, proximate, and foreseeable result of the deliberate indifference, reckless disregard, gross negligence, and failures to act by Defendants as alleged herein.

## CAUSES OF ACTION

### Count I – Title IX: Sexual Harassment/Discrimination/Deliberate Indifference (Against OSSD)

51. Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

52. Title IX's prohibition of discrimination on the basis of sex includes sexual harassment and abuse of a student by a teacher. *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75, 112 S. Ct. 1028, 117 L. Ed. 2d 208 (1992).

53. OSSD is a recipient of federal financial assistance under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et seq., and must protect its community from sex-based discrimination or harassment, including sexual harassment.

54. BC was a minor female citizen of Mississippi and as such a member of a protected class. BC attended school during the relevant times at OSHS.

55. BC was subjected to repeated acts of unwelcome conduct of a sexual nature, and/or that was premised on her sex, and was thereby sexually harassed by OSSD, including but not limited to:

a. Being groomed by Hawkins beginning in the Fall of 2022 when she was 16 years old and a vulnerable minor student, with Hawkins positioning himself as her "comfort place" and "refuge" while exploiting her difficult home life;

b. Having sexual comments made to her by Hawkins, such as "you gotta stop looking at me like

that, like you want me;"

    c. Having her body complimented in a sexual manner by Hawkins;

    d. Being subjected to touching, kissing, groping, mutual heavy petting and fondling on the premises of OSHS in the science lab and in Hawkins' classroom;

    e. Being subjected to Hawkins telling her he loved her and would leave his wife for her;

    f. Being groomed through gifts including a necklace she wore every day;

    g. Being coerced into exchanging nude photographs with Hawkins via social media and to communicate with Hawkins through a fake Snapchat account which he created under the name "Riley Reniford" to conceal the relationship from his wife;

    h. Being coerced into engaging in exchanges of sexually explicit acts with Hawkins during live video calls;

    i. Being subjected to statutory rape by her trusted teacher beginning in 2023;

    j. Being subjected to regular sexual encounters / statutory rapes approximately once a week throughout the first semester of her senior year at locations including Hawkins' home and in Hawkins' car in parking lots;

    k. Being subjected to physical and sexual contact at OSHS during her junior and senior year including sitting with her legs across Hawkins' lap at his desk while he taught class, frequent kissing and heavy petting in the classroom and science lab, and Hawkins rubbing against her in the hallways;

    l. Being subjected to sexual contact at school-sanctioned events; and

    m. Other instances to be shown at trial.

56. The sexual harassment of BC occurred under circumstances where OSSD exercised substantial control over Hawkins as the harasser and over the context in which the harassment occurred. Hawkins was a teacher employed by OSSD, vested with authority over BC and other minor students. The abuse was carried out in OSHS classrooms, the science lab, and school hallways

all of which were premises under OSSD's control.

57. OSSD's Sexual Harassment Policy defines "actual knowledge" as "notice of sexual harassment or allegations of sexual harassment to the Title IX Coordinator or to any employee of OSSD," and expressly states that "[a]ll employees of OSSD are mandatory reporters under Title IX." (Ex. 5) OSSD's Title IX Policy similarly states that "[a]ctual knowledge of sexual harassment is notice of sexual harassment or allegations of sexual harassment made to any employee." (Ex. 6)

58. OSSD had actual knowledge by its own definitions, and officials with authority to take corrective action had actual knowledge of Hawkins' sexual harassment and abuse of BC through multiple means, including but not limited to:

a. Direct facilitation by multiple OSSD teachers at OSHS, including Nick Giorgio, Amanda Vaughn, Milla Ramel, allowing BC to leave their classes early (often only 5 or 10 minutes into class) so BC could spend intimate time with Hawkins in his classroom;

b. Direct knowledge by two OSSD teachers at OSHS, who refused to allow BC to leave their classes early to spend time with Hawkins, one of which only stopped that process after initially allowing it on a frequent basis, by who never reported the inappropriate conduct to appropriate authorities (or who did and had the report(s) ignored);

c. Direct observations by multiple OSSD teachers and administrators at OSHS of BC spending a minimum of three hours a day in Hawkins' classroom during her senior year, usually sitting next to him at his desk with her legs or feet across his lap, including while Hawkins was teaching another class;

d. Direct observations by OSSD teachers and administrators at OSHS of physical contact between BC and Hawkins in classrooms, hallways, and on school premises;

e. Reports and/or notice given to OSSD teachers and administrators at OSHS (including but not limited to IEP teacher Ms. Glass) about the grossly inappropriate relationship between Hawkins

and BC;

f.  Hawkins' own admission to BC that his "boss" warned him to "calm it down" with regard to his relationship with BC because the administration was "investigating";

g.  An email from teacher Christina Hallett to Hawkins warning him to "watch out with that one because of the way she looks at you," which Hawkins showed to BC;

h.  Direct conversations between administrators and/or teachers (including on information and belief to Assistant Principal LaMenda Hayes and/or Mallory Arriaga) and Hawkins about his obvious sexualized relationship with BC;

i.  A heated argument between BC and Hawkins in the hallway arising from BC confronting Hawkins about believing he had impregnated her, and then burning her hand on a Bunsen burner in Hawkins' classroom or lab when he failed to adequately address her concerns, during which an OSHS teacher approached them and exclaimed something like "what the heck is going on here?" before simply walking away;

j.  The pervasive and open nature of the inappropriate relationship between Hawkins and BC, conducted in plain sight of students, teachers, administrators, and staff at OSHS;

k.  Colonel Stephen Farragut initially allowing BC to leave his class early to spend time with Hawkins, but eventually refusing to let her leave while telling her she went to Hawkins' class "too much," and on information and belief anonymously calling BC's father near the end of the first semester of BC's senior year to report that a teacher was sleeping with his daughter;

l.  Mr. Miles forbidding BC from going to Hawkins' class at all, demonstrating that at least one teacher recognized the relationship as sufficiently improper to refuse to facilitate it; and

m. The systemic knowledge throughout OSHS that BC was spending excessive amounts of time in Hawkins' classroom and engaging in physically intimate behavior with him.

59. OSSD's Sexual Harassment Policy defines "deliberate indifference" as "when OSSD's

response is clearly unreasonable in light of known circumstances," and states that "[a]dministrators and supervisors who either engage in sexual harassment or tolerate such conduct by other employees shall be subject to sanctions." (Ex. 5)

60. Despite having actual knowledge of Hawkins' sexual harassment and abuse of BC, OSSD officials with authority to institute corrective measures responded with deliberate indifference, a response that was clearly unreasonable under OSSD's own definition, by:

a. Failing to conduct any meaningful investigation despite Hawkins' boss warning Hawkins to "calm it down" and claiming to be "investigating";

b. Failing to separate BC from Hawkins or limit his access to her;

c. Failing to discipline Hawkins or take any corrective action;

d. Failing to report suspected child abuse to authorities as required by Mississippi's mandatory reporting laws and OSSD's own Policies;

e. Allowing the abuse to continue from the Fall of 2022 through November 2023;

f. Permitting teachers to facilitate the relationship by allowing BC to leave their classes to spend time with Hawkins;

g. Taking no action despite multiple reports, observations, and direct knowledge of the inappropriate relationship;

h. Failing to enforce the specific, written prohibitions of OSSD's Policies despite direct and pervasive knowledge of ongoing violations of each;

i. Failing to protect BC from a known predator operating within its walls;

j. Allowing Hawkins continued unsupervised access to BC despite knowledge of the grossly inappropriate and sexualized relationship; and

k. Failing to protect BC from the hostile educational environment that OSSD's own inaction created which was so severe that BC was unable to return to OSHS and was forced to withdraw

from in person learning entirely during her senior year.

61. Under OSSD's Sexual Harassment Policy, when any OSSD employee eighteen years or older is accused of "fondling or having any type of sexual involvement with any child under the age of eighteen," the principal and the Superintendent shall timely notify the OSSD attorney of such accusation, the Mississippi Department of Education and the Department of Human Services, provided that such accusation is reported to the principal and to the Superintendent and that there is a reasonable basis to believe that such accusation is true. The Superintendent or designee who fails to make this required report is subject to the penalties provided in Miss. Code Ann. § 37-11-35. (Ex. 5) No principal nor Superintendents made this required notification at any point during the two school years of reported, open, and documented inappropriate conduct between Hawkins and BC.

62. After police involvement and Hawkins' arrest in November 2023, OSSD further demonstrated deliberate indifference by failing to conduct a Title IX investigation as required by federal law and its own policies; failing to provide BC or her family information about Title IX grievance procedures; failing to provide BC with supportive measures required under Title IX and OSSD's Sexual Harassment and Title IX Policies, including counseling, course modification, and schedule changes (Ex. 5, 6); failing to reach out to BC or her family to offer counseling or any form of support; failing to take any steps to ensure BC could safely continue her education at OSHS; and failing to remedy the hostile educational environment that had been created.

63. Following Hawkins' arrest, BC was ostracized by peers, subjected to cruel online harassment including memes and messages, and publicly shamed, which retaliation was proximately caused by OSSD's complete failure to meaningfully respond to the abuse and/or offer required supportive measures or institute a reasonable plan for BC to return safely to school. OSSD's inaction left BC to face this retaliation without any protection or support.

64. OSSD's Title IX and Sexual Harassment Policies each require that supportive measures be

offered to a complainant "as appropriate, as reasonably available, without fee or charge, …before or after the filing of a formal complaint," and that such measures be "designed to restore or preserve equal access to the educational program or activity without unreasonably burdening the other party." Each Policy further requires that "[i]f [OSSD] does not offer supportive measures, the records will document why the response was not clearly unreasonable under the known circumstances." (Ex. 5, 6) OSSD maintained no such records, offered no such documentation, and provided no supportive measures whatsoever.

65. The conduct of OSSD and its employees was so severe, pervasive, and objectively offensive that it made it impossible for BC to derive meaningful, much less equal access to the educational opportunities and benefits provided by OSSD. BC was unable to return to OSHS, was forced to complete her senior year through online schooling, was deprived of her senior year experience, was unable to walk at her graduation ceremony, and ultimately dropped out of college.

66. OSSD failed to establish and/or train its employees to follow and/or follow adequate procedures for handling sex based discrimination and sexual harassment that complied with federal law, and failed to train its employees to follow and/or adhere to the policies and procedures it did have in place. OSSD's failure to enforce its own policies further evidences deliberate indifference, and left BC without protection, directly contributing to her suffering retaliation with no intervention from OSSD.

67. As a direct and proximate and foreseeable result of OSSD's deliberate indifference to the known sexual harassment and abuse of BC by Hawkins, BC suffered severe and permanent injuries and damages as described herein.

### Count II – 42 U.S.C. § 1983: Fourteenth Amendment Substantive Due Process (Against Hawkins)

68. During all material times, BC had a clearly established right under the Fourteenth Amendment to bodily integrity, including the right to be free from sexual grooming, sexual abuse,

sexual harassment and statutory rape perpetrated by a state-employed teacher acting under color of state law.

69. At all material times, Hawkins was employed by OSSD as a teacher at OSHS and acted under color of state law.

70. Hawkins, acting under color of state law, deliberately and intentionally violated BC's constitutional right to bodily integrity through his willful, sustained, and escalating course of sexual misconduct, including initiating physical and sexual contact with BC on OSSD premises, including kissing, groping, and heavy petting in his classroom and the OSHS science lab; using his authority as BC's teacher and OSSD's resources including classrooms, facilities, and class schedules, to facilitate and conceal his abuse; inducing BC to exchange nude photographs and engage in mutual masturbation via live video; and committing statutory rape against BC beginning in July 2023, when BC was a minor, and continuing through approximately weekly sexual encounters during the first semester of her senior year.

71. Hawkins' conduct was accomplished through and enabled by his employment with OSSD. Hawkins used his position of authority over BC as her teacher and access to the school facilities, his knowledge of her vulnerable emotional state, and the trust BC and her family placed in him as an OSSD employee, to systematically violate her bodily integrity.

72. As a direct, proximate, and foreseeable result of Hawkins' intentional violations of BC's clearly established right to bodily integrity, committed under color of state law, BC suffered severe and permanent injuries and damages described throughout this Complaint, including severe emotional distress and mental anguish, involuntary psychiatric hospitalization, depression, inability to maintain relationships and employment, disruption to her education, loss of equal access to the educational opportunities and benefits enjoyed by fellow students, and other non-economic and economic damages in amounts to be determined at trial.

73. Hawkins' willful, intentional, and malicious violations of BC's constitutional rights, carried out with callous and reckless disregard for her safety, well-being, and federally protected rights, warrant an award of punitive damages against Hawkins in an amount sufficient to punish Hawkins and deter future similar misconduct by Hawkins and others similarly situated.

### Count III – 42 U.S.C. § 1983: *Monell* Claims
### (Against OSSD)

74. During all material times, BC had a clearly established constitutional right under the Fourteenth Amendment to equal protection of the laws and bodily integrity, including the right to be free from sexual harassment, grooming, abuse, and rape by a school employed teacher.

75. At all material times, OSSD and its employees acted under color of the laws, customs, and usages of OSSD and the State of Mississippi within the meaning of 42 U.S.C. § 1983.

76. BC was at all relevant times a minor female citizen of Mississippi and a member of a protected class.

77. OSSD, acting under color of state law, intentionally discriminated against BC, or at a minimum, acted with deliberate indifference to known acts of discrimination against her, thereby treating her differently from other students on the basis of her sex by allowing Hawkins, a male teacher vested with authority over BC, target, groom, and sexually abuse her as a female student, and by consciously choosing not to extend any protection to BC despite knowing of the sexual harassment and abuse.

78. At all material times, OSSD was vested with the State authority and the non-delegable responsibility and duty of adhering to, complying with and enforcing the laws of the United States of America and State of Mississippi. While acting under color of State law, OSSD engaged in a course of conduct and implemented policies, customs, plans, or practices wherein the rights, privileges and immunities of BC were violated, resulting in a deprivation of BC's rights under the Fourteenth Amendment. Hawkins violated BC's constitutional right to bodily integrity through his sexual

grooming, abuse, and statutory rape of BC.

79. OSSD maintained a policy, custom, or practice, implemented through its teachers and with actual knowledge of administration, of permitting BC to leave her assigned classes so that she could go to Hawkins' classroom. Multiple OSSD teachers, including Nick Giorgio, Amanda Vaughn, and Milla Ramel repeatedly and knowingly released BC from their classes for this purpose. This custom provided Hawkins with the daily, unrestricted access to BC that enabled and perpetuated his sexual abuse of BC on OSSD premises. OSSD's policy, custom, or practice of permitting BC to leave class daily was a moving force behind BC's violation of bodily integrity under the Fourteenth Amendment.

80. OSSD had and has a policy, custom, or practice of failing to have adequate and required written policies addressing complaints and grievances related to sexual harassment, and failing to have and implement adequate and required training of its employees and representatives related to sexual harassment and allowing sexual harassment in violation of the written policies it did have prohibiting such acts. Despite having inadequate written policies, OCSD refused and refuses to even enforce those policies by allowing its employees to violate its anti-harassment and sexual harassment policies by participating in and/or observing without reporting or intervening against the harassment and sexual harassment of BC (and on information and belief, other students). OSSD's administrators and teachers knew of sexual harassment and abuse of BC but refused to abide by its written policies and procedures and/or applicable federal and State law, resulting in the violation of BC's constitutional rights. OSSD's failure to have and enforce adequate sexual harassment policies was a moving force behind the violation of BC's right to bodily integrity.

81. OSSD's failure to enforce and failure to train its employees on Title IX requirements for identifying, reporting, and responding to sexual harassment, including the requirement to offer supportive measures and document reasons for not doing so, and the requirement to conduct

prompt, adequate, and impartial investigations of sexual harassment complaints, was a moving force behind Hawkins' ongoing violation of BC's right to bodily integrity. Had OSSD's employees been trained on Title IX, they would have recognized and reported Hawkins' conduct and halted the abuse before it escalated to statutory rape.

82. OSSD's failure to follow and enforce Standard 4: Education/Student Relationships under the Mississippi Educator Code of Ethics was a moving force behind the violation of BC's right to bodily integrity. Standard 4 directly prohibits the conduct Hawkins engaged in. OSSD's administrators failed to enforce Standard 4 despite direct observations of Hawkins' conduct by multiple teachers and administrators.

83. OSSD had the duty to train and supervise its administrators, teachers, and other personnel to ensure the safety and well-being of students entrusted to its care and supervision. OSSD's failure to train, supervise, and enforce its Policies was the moving force behind the violation of BC's constitutional rights, including in the following non-exclusive respects:

a.  Failing to train employees on recognizing signs of sexual grooming, abuse, and inappropriate teacher-student relationships;

b.  Failing to train employees on and enforce Standard 4: Education/ Student Relationships under the Mississippi Educator Code of Ethics;

c.  Failing to train employees on the specific prohibitions in OSSD's Staff/Student Non-fraternization Policy, including the prohibition on gift giving to students, social media and text communications with students, fraternizing with students, and sexual relations with students, notwithstanding that Policy specifically requires the superintendent and principals to "annually remind staff members and orient new staff members" on these exact prohibitions (Ex. 4);

d.  Failing to train employees on the content of OSSD's Unlawful or Violent Acts Policy, which defines "unlawful activity" to expressly include "rape," "sexual battery," and "[f]ondling, touching,

handling, etc. of a child for lustful purposes", which Hawkins committed on OSSD property, and which requires that "[w]hen the Superintendent or his/her designee has a reasonable belief that an act has occurred on educational property or during a school related activity involving any of the offenses of this section, the superintendent or his/her designee shall immediately report the act to the appropriate local law enforcement agency." (See Policy JCBE: Unlawful or Violent Acts, attached as "Exhibit 7") The complete absence of any such report despite approximately a year of observed, documented, and directly reported sexual touching, fondling, and physical contact between Hawkins and BC on OSSD property evidences that OSSD's employees were never trained on the mandatory reporting obligation imposed by OSSD's Unlawful or Violent Acts Policy;

e. Failing to train employees on their mandatory reporting obligations under Mississippi law including Miss. Code Ann. §§43-21-353 and 97-5-24, and under its own Policies for suspected child abuse including OSSD's Sexual Harassment Policy (Ex. 5);

f. Failing to train employees on Title IX requirements for identifying, reporting, and responding to sexual harassment, including the requirement to offer supportive measures and document reasons for not doing so;

g. Failing to train administrators on conducting prompt, adequate, and impartial investigations of sexual harassment complaints;

h. Failing to supervise teacher' interactions with students and failing to monitor and prevent inappropriate teacher-student relationships;

i. Tolerating and ignoring obvious inappropriate teacher-student relationships even when brought to the attention of administrators;

j. Failing to discipline employees who ignore warning signs of abuse or who facilitate inappropriate relationships;

k. Failing to discipline teachers who allow students to leave class to spend extended periods of

inappropriate time with another teacher;

l.   Failing to establish and enforce adequate reporting procedures for suspected abuse;

m. Failing to take corrective action despite actual knowledge of abuse;

n.  Creating an environment where teacher-student sexual abuse was foreseeable but ignored;

o.  Creating an environment where teacher-student sexual abuse was normalized; and/ot

p.  Otherwise, failing to enforce its own policies on sexual harassment, student safety, mandatory reporting, and Title IX compliance.

84. OSSD had actual knowledge of Hawkins' ongoing violation of BC's right to bodily integrity including but not limited to direct observations by multiple OSHS teachers and administrators of BC spending hours per day in Hawkins' classroom (including time when she should have been in her own classes); a direct warning issued by administration to Hawkins to "calm it down" while claiming to be "investigating"; a teacher's direct written warning to Hawkins about the concerning nature of his interactions with BC; the direct observation of a heated hallway altercation between BC and Hawkins by an OSHS teacher; direct reports to IEP teacher Ms. Glass, and Colonel Farragut's and Mr. Miles' independent decisions to restrict BC's access to Hawkins, and a teacher's (believed to be Colonel Farragut) "anonymous" report to BC's father that an OSHS teacher was sleeping with her. OSSD's actual knowledge was not limited to a single incident or a single observer. It was pervasive, documented, and known at multiple levels of the school's administration and faculty.

85. Despite actual knowledge of the ongoing violation of BC's right to bodily integrity, OSSD responded with deliberate indifference. OSSD did not issue any discipline to Hawkins; conducted no formal investigation; placed no restrictions on Hawkins' access to BC; issued no discipline to the teachers who repeatedly facilitated BC's access to Hawkins; made no report to law enforcement as required by Mississippi law and OSSD's Policies; and failed to notify the OSSD attorney, Mississippi Department of Education, or the Department of Human Services as required by its own Policies

and applicable law.

86. As evidenced by OSSD's utter failure to act upon the *months* of sexual harassment of BC which was directly observed, known about, and facilitated by OSSD, OSSD had prior notice of similar incidents or a pattern of similar failures involving sexual misconduct by teachers, inappropriate teacher-student relationships, failures to report suspected child abuse, and/or failures to protect students from sexual harassment and abuse. OSSD's history of ignoring complaints and/or notice of sexual harassment, sexual misconduct, and sexual abuse, demonstrates a pattern and practice of deliberate indifference to students' constitutional rights that predates and extends well beyond BC's case. OSSD knew or should have known that its failure to train, supervise, and discipline its employees would lead to violations of students' constitutional rights, including BC's right to bodily integrity and to be free from sexual harassment. Numerous authorities, including federal law, Mississippi law, and OSSD's own policies, place protections in place for minors to ensure their safety which OSSD failed to follow resulting in BC's violation of her constitutional rights.

87. Each of the policies, customs, and failures identified above was independently and collectively the moving force behind Hawkins' violation of BC's constitutional right to bodily integrity under the Fourteenth Amendment. OSSD's custom of permitting BC to leave class daily was the moving force that put BC in Hawkins' classroom, alone, every day, giving him the unrestricted access he used to groom and abuse her. OSSD's failure to train its employees on Title IX was the moving force that left every teacher and administrator without the knowledge or obligation to recognize what Hawkins was doing as sexual harassment and to act. OSSD's failure to enforce and train on Standard 4 was the moving force that stripped away the most direct and specific ethical prohibition on Hawkins' conduct and left OSSD's employees without any framework to identify, report, or stop it. OSSD's failure to train on its own mandatory reporting policies was

the moving force that ensured no report was ever made to law enforcement, the Department of Education, or child protective services, allowing the abuse to continue uninterrupted. OSSD's custom of deliberate indifference, of knowing and doing nothing, was the moving force that signaled to every teacher and administrator that Hawkins' conduct was tolerated, that BC would not be protected, and that the abuse could and would continue. But for each of these policies, customs, and failures, Hawkins' abuse of BC would have been identified, reported, and stopped. Each of these moving forces together were an overwhelming force one that drove this abuse from grooming to statutory rape while OSSD stood by and watched.

88. John and Jane Doe Defendants may include the OSHS Supervisors who knew about Hawkins' grooming and sexual abuse / inappropriate sexual relationship with BC but did nothing to intervene or report same and thereby facilitated said conduct. Plaintiff will amend her Complaint after Discovery to add the appropriate Supervisor(s) and claims for supervisor liability.

89. As a direct and proximate and foreseeable result of OSSD's policies, customs, and failures to train and supervise, each of which was a moving force behind the violation of BC's constitutional rights, BC suffered injuries and losses as described throughout this Complaint, including but not limited to emotional distress, mental anguish, emotional suffering and humiliation requiring medical treatment in the past and in the future, disruption to her education and loss of equal access to the education and benefits enjoyed by fellow students, and a deprivation of her rights guaranteed by the Fourteenth Amendment, and in direct violation of State law, Department of Education regulations, and Title IX.

### Count IV – Negligence under the Mississippi Tort Claims Act
### (Against OSSD)

90. The Mississippi Tort Claims Act ("MTCA") provides a civil remedy against a governmental entity for acts or omissions giving rise to liability. OSSD is a governmental entity under the MTCA.

91. The MTCA waives sovereign immunity and allows for a negligence cause of action against

OSSD for the breach of the duties OSSD and its employees owed to BC. See Miss. Code Ann. §11-46-1, et seq. (Rev. 2012); see also *BC v. City of Pearl*, 282 So. 3d 669, 672 (Miss. Ct. App. 2019). Those duties can be, and are, both statutory and assumed through OSSD's policies and procedures. Discretionary functions are exempted, but ministerial duties are not.

92. A ministerial duty is one positively designated by statute, ordinance, or regulation, or a governmental entity's own adopted policies. Mississippi law holds that where the "Legislature has granted the school district the authority to create a rule or regulation," such rule or regulation "imposes a positive duty on a school [to exercise ordinary care in the performance of that regulation.]" *Moss Point Sch. Dist. v. Stennis*, 132 So.3d 1047, 1052 (Miss. 2014).

93. OSSD, by statute and/or its own policies, had ministerial duties and a duty to use ordinary care and take reasonable steps to:

a.   Maintain a safe school environment and enact and implement anti-harassment policies to prevent harassing behavior, as required by Miss. Code Ann. Section 37-9-69 (requiring the provision of a safe school environment) and Section 37-11-67 (regarding policies for prohibiting harassment and bullying behavior in schools by school employees and students), and Article 7 of Chapter 7, "Boards of Trustees; General Powers and Duties", Miss. Code Ann. § 37-7-301(l) (granting school districts the authority to create rules or regulations, and imposing a positive duty on them to exercise ordinary care in the performance of same once enacted).

b.   Report the known and/or suspected sexual harassment and abuse of BC, as required by Miss. Code Ann. § 43-21-353 (requiring school employees to report suspected child) and OSSD's Student Safety Policy which states "OSSD personnel shall immediately report suspected child abuse or neglect to the Mississippi Department of Human Services" (Ex. 2);

c.   Report the known sexual involvement of a school employee with a minor student, as required by Miss. Code Ann. § 97-5-24 (requiring school employes to report sexual involvement of a school

employee with a student to appropriate authorities, and providing criminal penalties for failure to report), which OSSD's Sexual Harassment Policy cross-references (Ex. 5);

d.  Timely notify the OSSD attorney, the Mississippi Department of Education, and the Department of Human Services upon any accusation or notice that an OSSD employee has engaged in sexual involvement with a minor, as specifically required by OSSD's Sexual Harassment Policy, which states: "If any person eighteen (18) years or older who is employed by the OSSD is accused of fondling or having any type of sexual involvement with any child under the age of eighteen (18) years, the principal of such school and the Superintendent of the OSSD shall timely notify the OSSD attorney of such accusation, the Mississippi Department of Education and the Department of Human Services, provided that such accusation is reported to the principal and to the Superintendent and that there is a reasonable basis to believe that such accusation is true." The Policy further provides that "[t]he Superintendent, or his/her designee, who fails to make a report required by this section shall be subject to the penalties provided in MS Code Section 37-11-35" (Ex. 5);

e.  Prohibit and immediately act upon any sexual relationship, contact, or sexually nuanced behavior or communication between a staff member and a student, as required by OSSD's Staff/Student Non-fraternization Policy, which states that "[i]t is the policy of the [OSSD] Board of Trustees (BOT) to prohibit any sexual relationship, contact or sexually nuanced behavior or communication between a staff member and a student, while the student is enrolled in the school system" and which specifically prohibits: fraternizing with students; counseling or assessing a student's personal problems relating to mental health and/or family relationships but instead, should refer the student to appropriate school personnel or agency for assistance; exchanging gifts with students; texting students or participating in student online forums; connecting with students on social media for non-school-related purposes; associating with students in any situation that could be

considered sexually suggestive; and dating students or engaging in sexual relations with students, "regardless of age and/or consent" (Ex. 4);

f. Provide annual training and orientation to staff members on the prohibitions of OSSD's Staff/Student Non-fraternization Policy, which mandates that "[t]he superintendent and the school principals will annually remind staff members and orient new staff members concerning the importance of maintaining proper decorum in the on-line, digital world as well as in person," with "special emphasis" on improper fraternization with students using social media and similar internet sites or social networks, the inappropriateness of posting items with sexual content, and "[t]he possibility of penalties, including dismissal from employment, for failure to exercise good judgment" (Ex. 4);

g. Prohibit sexual activity, groping, offensive touching, sexual harassment, and sexual battery on school property and at school-sponsored activities;

h. Respond promptly and reasonably to actual knowledge of sexual harassment within OSSD's educational program or activity, offer supportive measures to BC including counseling, course modification, schedule changes, and increased monitoring, and document the reasons for any decision not to offer supportive measures, as required by OSSD's Sexual Harassment Policy and Title IX Policy. (Ex. 5, 6) OSSD offered no supportive measures and maintained no records documenting any reason for not doing so;

i. Ensure equal educational opportunities for BC free from sexual harassment, as required by OSSD's Equal Educational Opportunities Policy, which states that "[e]very pupil of the [OSSD] will have equal educational opportunities regardless of ... sex" and that "OSSD prohibits sexual harassment of or by any student" (See Policy JAA: Equal Educational Opportunities Policy, attached as "Exhibit 8");

j. Supervise BC and other minor students entrusted to its care, and supervise Hawkins and

other employees in their interactions with students, as required by OSSD's Staff/Student Non-fraternization Policy, which states that "[s]taff members shall maintain a reasonable standard of care for the supervision, control, and protection of students commensurate with their assigned duties and responsibilities," (Ex. 4), and pursuant to OSSD's statutory authority and duties under Miss. Code Ann. § 37-7-301(l);

k.   Hire, train, retain, and supervise its employees and administrators to recognize the signs of sexual grooming and inappropriate teacher-student relationships, to maintain appropriate teacher-student boundaries consistent with the specific prohibitions of OSSD's Staff/Student Non-fraternization Policy and Sexual Harassment Policy (Ex. 4, 5), and to fulfill mandatory reporting obligations under Miss. Code Ann. §§ 43-21-353 and 97-5-24 and OSSD's own adopted policies;

l.   Upon receiving actual notice of Hawkins' concerning and inappropriate conduct with BC, promptly investigate the nature of the relationship, notify BC's parents of the known concern, restrict Hawkins' access to BC pending investigation, and take all steps necessary to ensure BC's safety; and/or

m. Otherwise follow its written policies and procedures, and applicable Mississippi law.

94. OSSD had/or assumed these ministerial duties through its promises to the parents of children attending its schools as set forth in the policies, procedures, and regulations it adopted in accordance with Mississippi law. Those promises of safety and supervision were relied upon by BC's parents in allowing BC to attend OSHS.

95. OSSD breached each of the foregoing ministerial duties by:

a.   Failing to maintain a safe school environment and enforce its anti-harassment policies, in violation of Miss. Code Ann. §§ 37-9-69 and 37-11-67 and OSSD's Equal Educational Opportunities Policy, by allowing Hawkins to groom and sexually abuse BC on OSHS premises, in his classroom, the science lab, and school hallways, and at a school-sanctioned football game, for

over one year, while multiple OSSD teachers knowingly facilitated his daily access to BC and administrators with direct knowledge of the relationship took no steps to stop it (Ex. 8);

b.  Failing to immediately report suspected and/or known child abuse to the Mississippi Department of Human Services, in violation of Miss. Code Ann. § 43-21-353 and OSSD's Student Safety Policy, notwithstanding that multiple OSSD employees, including Hawkins' boss who warned him that he needed to "cool it down" with BC because administration was allegedly "investigating", teachers who directly observed BC in, and directly facilitated, intimate physical contact with Hawkins in his classroom on a daily basis over two school years, the teacher who witnessed BC and Hawkins in a public shouting match in the school hallway after BC burned her hand on a Bunsen burner while confronting Hawkins about a feared pregnancy, and teacher Christina Hallett, who observed a concerning interaction and emailed Hawkins directly rather than reporting to authorities, each observed conduct constituting suspected child abuse and failed to make any report as required by law and OSSD's Student Safety Policy (Ex. 2);

c.  Failing to report the known sexual involvement of a school employee with a minor student to appropriate authorities, in violation of Miss. Code Ann. § 97-5-24 and OSSD's Sexual Harassment Policy (Ex. 5), notwithstanding that OSSD's own supervisory officials had direct, documented knowledge of Hawkins' sexual relationship with BC, a minor student, for over one year, and not a single OSSD employee filed any report with the Ocean Springs Police Department or any other authority as required by this statute and OSSD's own policy;

d.  Failing to timely notify the OSSD attorney, the Mississippi Department of Education, and the Department of Human Services, in violation of OSSD's Sexual Harassment Policy, which specifically and mandatorily requires that "[i]f any person eighteen (18) years or older who is employed by the OSSD is accused of fondling or having any type of sexual involvement with any child under the age of eighteen (18) years, the principal of such school and the Superintendent of the

OSSD shall timely notify the OSSD attorney of such accusation, the Mississippi Department of Education and the Department of Human Services", notwithstanding that Principal and Superintendents knowledge of the relationship, had warned Hawkins to "calm it down," and had represented that administration was "investigating," thereby establishing far more than the "reasonable basis to believe that such accusation is true" required to trigger the mandatory notification obligation. OSSD's Sexual Harassment Policy expressly provides that the Superintendent or designee who fails to make this required report shall be subject to the penalties of Miss. Code Ann. § 37-11-35 (Ex. 5);

e.   Failing to enforce OSSD's Staff/Student Non-fraternization Policy's specific, written prohibitions against Hawkins' conduct by failing to take any action despite direct and pervasive knowledge that Hawkins was violating each of the Policy's specific prohibitions, including: buying BC a necklace she wore every day, in direct violation the Policy's prohibition that "[s]taff members shall not exchange gifts with students"; creating a fake Snapchat account under the name "Riley Reniford" and communicating with BC through private Instagram messages, in direct violation of the Policy's prohibition that "[s]taff members shall not text students nor participate in any student online forums excluding school designated platforms" and shall not "connect with students for non-school-related gain or interest on any social media platforms"; and engaging in sexual relations with BC (on and off campus), in direct violation of the Policy's explicit prohibition that "[s]exual relations with students, regardless of age and/or consent, are prohibited and will result in dismissal and criminal prosecution" (Ex. 4);

f.   Failing to provide the annual staff training required by OSSD's Staff/Student Non-fraternization Policy by failing to provide the annual reminder and new-staff orientation on maintaining proper decorum that the Policy specifically requires the superintendent and principals to provide each year, with "special emphasis" on improper fraternization with students using social

media and similar internet sites or social networks, as demonstrated by the complete absence of any employee intervention for Hawkins' conduct (Ex. 4);

g. Failing to offer BC supportive measures, conduct a Title IX investigation, or document any reason for not doing so before or after Hawkins' arrest, in violation of OSSD's Sexual Harassment Policy and Title IX Policy, by failing to provide any of the supportive measures required by OSSD's Sexual Harassment Policy and Title IX Policy, including counseling, course modification, schedule changes, or increased monitoring; by conducting no Title IX investigation before or following Hawkins' arrest in November 2023; and by maintaining no records documenting any reason why supportive measures were not offered, as specifically and mandatorily required by OSSD's Sexual Harassment Policy, which states "[i]f the OSSD does not offer supportive measures, the records will document why the response was not clearly unreasonable under the known circumstances," and by OSSD's Title IX Policy, which contains the identical requirement (Ex. 5, 6);

h. Failing to hire, train, retain, and supervise Hawkins and other employees with ordinary care by hiring Hawkins without an adequate background investigation into his fitness to work with minor students; by retaining Hawkins despite mounting and undeniable warning signs of, and known by fellow teachers and administrators at OSHS, his ongoing inappropriate conduct with BC; by failing to train employees on the specific prohibitions and mandatory obligations of OSSD's Staff/Student Non-fraternization Policy (Ex. 4), Sexual Harassment Policy (Ex. 5), and Title IX Policy (Ex. 6); by permitting teachers Nick Giorgio, Amanda Vaughn, Milla Ramel, and initially Colonel Stephen Farragut to repeatedly excuse BC from their classes to spend intimate time with Hawkins without supervision, consequence, or intervention; and by taking no disciplinary action against Hawkins or any other employee despite direct, pervasive, and documented knowledge of the relationship over the course of approximately one year;

i. Failing, upon receiving actual notice of Hawkins' concerning and inappropriate conduct with

BC, to conduct any investigation, to notify BC's parents of the known concern, or to place any restriction on Hawkins' access to BC pending investigation; and/or

j.   Failing to otherwise follow its written policies and procedures, and applicable Mississippi law.

96. OSSD's violations of the above enumerated statutes constitute negligence *per se*. BC was a member of the class of persons, minor students, those statutes were designed to protect, and she suffered the specific type of harm (i.e., sexual harassment, grooming, and abuse by a school employee) those statutes were designed to prevent.

97. OSSD's conduct constituted not just negligence but gross negligence and/or reckless disregard given the severity and obviousness of the danger to BC. The sustained period of sexual grooming, abuse, and statutory rape occurred openly on school premises, in school facilities, during school hours, and with the direct knowledge of numerous teachers and administrators. Despite this pervasive knowledge and multiple warning signs, OSSD took no meaningful action to protect BC or stop the abuse. OSSD's own adoption of its Staff/Student Non-fraternization, Sexual Harassment, Title IX, Unlawful or Violent Acts, and Student Safety Policies demonstrates that OSSD was fully aware of the foreseeable risk of teacher-student sexual misconduct.

98. The injuries and damages to BC were a direct, proximate, and foreseeable result of OSSD's breaches of its ministerial duties. OSSD's failures to supervise BC and Hawkins, to investigate the relationship, to protect BC from the known danger, to train employees on their mandatory reporting obligations, and to report suspected child abuse to authorities, caused BC to suffer the sustained period of sexual grooming, abuse, and statutory rape, and the resulting severe and permanent injuries.

99. As a direct and proximate and foreseeable result of OSSD's negligence and/or gross negligence in breaching its ministerial duties, BC suffered severe and permanent injuries and damages as described throughout this Complaint.

**Count V – Negligent Infliction of Emotional Distress**
**(Against OSSD)**

100. OSSD, through its negligent act and omissions as described herein, caused BC emotional distress by creating, harboring, and refusing to correct an environment that allowed and encouraged pervasive sexual harassment and abuse.

101. Despite direct and repeated notice of the relationship through direct observations, written communications, verbal reports, and its own administrators' direct confrontation of Hawkins, OSSD warned Hawkins to "calm it down," claimed to be investigating, permitted teachers to continue routing BC to Hawkins' classroom daily, made no report to authorities, issued no discipline, failed to take any of the mandatory actions required by OSSD's Policies, and allowed Hawkins continued unsupervised access to BC. After Hawkins' arrest, OSSD offered no counseling, no support, and no accommodations of any kind to BC, despite its Policies requiring that supportive measures including counseling be offered to complainants.

102. It was reasonably foreseeable to OSSD that allowing a teacher to sexually groom, abuse, and statutorily rape a vulnerable minor student while under OSSD's care and supervision, despite having actual knowledge of the abuse and failing to investigate, intervene, and discipline the perpetrator to protect a minor student like BC, and then failing to offer supportive measures or conduct the investigation required by Title IX after Hawkins was arrested, would result in severe emotional distress. OSSD's refusal to provide BC with any reasonable protection or meaningful accommodation was a direct and proximate cause of her emotional distress and other injuries.

103. The severe emotional distress suffered by BC was a foreseeable and natural consequence of OSSD's failures to protect her from sexual grooming, abuse, and statutory rape by her teacher.

104. As a foreseeable, direct, and proximate result of these acts and omissions of OSSD, BC suffered injuries and damages including, but not limited to severe emotional distress and mental

anguish; past, present, and future emotional pain, suffering, and loss of enjoyment of life, which is grievous; and past, present, and future medical bills, therapy costs, and other related expenses incurred for hospitalization and medical treatment.

**Count VI – Sexual Assault and Battery**
**(Against Hawkins)**

105. Hawkins, while acting as BC's teacher and holding a position of trust and authority over BC, engaged in sexual grooming, sexual assaults and batteries and rape upon BC by intentionally, knowingly, and/or recklessly causing harmful and offensive contact with BC, without her consent. BC, as a minor, could not as a matter of law consent to sexual contact with Hawkins.

106. Hawkins repeatedly and intentionally placed BC in imminent apprehension of harmful and offensive contact including making overtly sexual comments to BC; making sexualizing remarks about BC's body and clothing; approaching and rubbing against BC in the school hallways; initiating kissing BC; and steering their interactions with the intent to cause physical and sexual contact. Each of these acts was undertaken with knowledge that, to a substantial certainty, BC would be placed in imminent apprehension of harmful or offensive contact.

107. The intentional, non-consensual touching of BC including kissing BC; touching and grouping BC; engaging in heavy petting and fondling with BC; rubbing BC in the school hallways; inducing BC to engage in sexually explicit acts through video chats, and engaging in sexual intercourse with BC constitute assaults and batteries. Hawkins intended to cause offensive physical contact with BC, BC was put in imminent apprehension of such contact, and the offensive contact actually occurred.

108. As a direct and proximate result of the tortious, unlawful, and wrongful acts and conduct of Hawkins, Plaintiff suffered the injuries and damages described in this Complaint and is entitled to compensatory damages for all economic and non-economic damages referenced herein and shown at trial.

109. Further, Hawkins' willful and wanton conduct, taken in callous and reckless disregard for BC's rights and with malice, warrant punitive damage against Hawkins in an amount sufficient to punish Hawkins and make an example to deter future, similar misconduct by Hawkins and other, similarly situated individuals.

### Count VII – Negligent and/or Intentional Infliction of Emotional Distress
### (Against Hawkins)

110. Hawkins' actions and omissions as described herein were reasonably foreseeable to cause and did cause BC to suffer severe emotional distress. As BC's teacher, Hawkins owed BC a duty to act within the bounds of his professional responsibilities and to refrain from exploiting his position of trust and authority over BC. Hawkins breached that duty through the sustained course of grooming, sexual abuse, and statutory rape described herein, and it was reasonably foreseeable that such conduct would cause and did cause BC severe emotional distress.

111. Alternatively, at all times relevant, Hawkins engaged in outrageous conduct beyond all possible bounds of decency towards BC, with the intention to cause or with reckless disregard for the probability of causing BC to suffer severe emotional distress.

112. Hawkins actions constituted outrageous conduct because he knowingly abused his position of authority as BC's teacher and knew BC was particularly vulnerable because of her minority and her difficult home life. Hawkins conduct included deliberately targeting a known emotionally vulnerable minor student entrusted to his care; exploiting her difficult home life to isolate her and manufacture a relationship of dependency by positioning himself as her "comfort place" and "refuge"; escalating that manufactured relationship through sexual comments, physical groping on OSHS premises, declarations of love, promises to leave his wife and run away with BC, and gift giving including a necklace she wore every day; creating a fake Snapchat account under the name "Riley Reniford" to secretly communicate with BC and conceal the relationship from his wife, in violation of OSSD's Staff/Student Non-fraternization Policy's prohibition on social media contact

with students; inducing BC to exchange nude photographs and engage in explicit sexual acts via live video; committing statutory rape against BC beginning when she was less than 18 years old, in violation of Miss. Code Ann. §§ 97-3-95 and 97-29-3; and maintaining a pattern of approximately weekly sexual intercourse throughout the first semester of her senior year (Ex. 4).

113. The capricious, willful, and intentional acts and omissions of Hawkins were reasonably foreseeable to inflict, proximately inflicted, and proximately will continue to inflict severe emotional distress on BC which has required BC to seek medical treatment, for all of which BC demands judgement in an amount to be determined by the Jury at the trial of this case.

114. As a proximate result of Hawkins' conduct, BC has suffered and continues to suffer extreme harm, injuries, and damages, and reasonably expects to suffer them in the future, including but not limited to severe emotional injuries and severe mental anguish; past, present, and future emotional pain and suffering which is grievous; medical bills and other related expenses which have been incurred in the past and which will be incurred in the future; embarrassment, humiliation, degradation, fear, stress, anxiety, and inconvenience; loss of enjoyment of life; and other non-pecuniary damages in an amount to be determined at trial.

115. As a result of these intentional, willful, malicious, and/or outrageous acts on the part of Hawkins, BC is entitled to an award of compensatory damages against Hawkins for all economic and non-economic damages recoverable under law.

116. Further, Hawkins' willful and wanton conduct, taken in callous and reckless disregard for BC's rights and with malice, warrant punitive damages against Hawkins in an amount sufficient to punish Hawkins and to deter future, similar misconduct.

## **DAMAGES AND REMEDIES**

117. As a direct, proximate, and foreseeable result of Defendants', and each of their actions and omissions, Plaintiff is entitled to recover damages including, but not limited to, the following from

the Defendants, jointly and severally where applicable, in amounts to be determined by the Jury and/or Court at the trial of this case:

a. Past, present, and future economic damages, including but not limited to medical bills, loss of earning capacity resulting from educational disruption including being forced to drop out of college, and other incidental and consequential damages;

b. Past, present, and future emotional distress and mental anguish, inconvenience, pain, suffering, humiliation, shame, loss of enjoyment of life, loss of self-esteem, loss of her good name, loss of respect from the community, fear and embarrassment, injury to reputation, post-traumatic stress disorder symptoms, depression, suicidal ideation, paranoia, anxiety, inability to maintain relationships or employment, loss of normal adolescent development, disruption to family relationships and family harmony, and any other non-economic damages all of which Plaintiff suffered;

c. Disruption to her education and loss of equal access to the education and benefits enjoyed by fellow students, including being unable to return to OSHS to complete her senior year in person, being forced to complete her senior year online, being deprived of the normal senior year experience with her friends, being unable to walk at her graduation ceremony due to embarrassment and trauma, and dropping out of college due to the ongoing effects of the trauma;

d. Financial damages, which may include future loss of earnings or earning capacity;

e. All incidental damages;

f. All other economic and non-economic damages recoverable by law;

g. Attorneys' fees and expenses pursuant to 42 U.S.C. § 1988 for Section 1983 claims and under Title IX;

h. Pre-judgment interest running from the date of the wrongful conduct or such other date that the Court finds to be reasonable;

i.   Post judgment interest; and

j.   All other damages, equitable and/or other relief available to the Plaintiff under federal and state law.

118. Defendants' acts and omissions are so egregious as to evoke outrage and rise to the level of an independent tort, and/or represent reckless disregard for the safety and well-being of members of the public, including BC, such that Defendants should be required to pay exemplary and/or punitive damages, to the extent allowed by law, in an amount sufficient to punish Defendants, and each of them, and to make an example to deter Defendants and others from engaging in such conduct in the future said amounts to be determined by the Jury at the trial of this cause. Punitive damages are sought against Defendant James Hawkins individually for his egregious conduct in grooming, sexually abusing, and committing statutory rape against BC. To the extent punitive damages are recoverable under applicable law against OSSD and/or John and Jane Does 1-10, or any of them, Plaintiff seeks such damages.

119. On information and belief, Plaintiff alleges that BC's injuries will be permanent and will have significant consequences for the rest of her life.

120. The aforesaid damages to the Plaintiff having been proximately and foreseeably caused by the aforesaid acts and omissions of the Defendants, and each of them, Plaintiff is entitled to sue and recover damages proximately resulting therefrom, including compensatory damages, economic damages, non-economic damages, punitive damages, attorney's fees, pre-judgment and post-judgment interest, and such other relief as Plaintiff may be entitled to under applicable law.

Plaintiff demands judgment of and from the Defendants in an amount that will reasonably compensate Plaintiff for all of her injuries and/or damages, and to punish Defendants in order to deter future wrongful conduct, with said damages to include compensatory damages in an amount determined by the Jury and/or the Court (only to the extent Plaintiff is not entitled under law to

have a Jury determine her entitlement to and/or the amount of damages), as well as punitive damages (to the extent recoverable under law), attorney's fees, and costs of these proceedings, pre-judgment and post-judgment interest, and such other relief as Plaintiff may be entitled to under applicable law, and any and all other relief this Honorable Court deems just, proper, and equitable.

Respectfully submitted this the 25th day of March, 2026.

RICKY ALLEN CARTER, AS NEXT FRIEND OF BC, A MINOR, PLAINTIFF

BY: _____

CHRISTOPHER C. VAN CLEAVE, MSB # 10796

_____

TAYLOR F. CLARK, MSB # 106750

Christopher C. Van Cleave, Esquire (MSB 10796)
Taylor F. Clark (MSB 106750)
Van Cleave Law, P.A.
146 Porter Avenue
Post Office Box 1916
Biloxi, Mississippi 39533-1916
Phone: 228-432-7826
Fax: 228-456-0998
christopher@vancleavelaw.com
taylor@vancleavelaw.com
sandy@vancleavelaw.com
jamie@vancelavelaw.com